First case this afternoon is 4-12-1050, Akemann v. Quinn, appearance of Mr. Draper on behalf of the appellant, Mr. Hosek on behalf of the appellate. The state has filed a motion to cite additional authority on a recent decision from the First District in another case. Mr. Draper, have you received a copy of the motion? I did, the same afternoon it was filed. The court is going to grant it because we generally pay attention to new decisions for what it's worth in any event. You can both discuss it. In the event, after our argument, you believe you'd want to address it more in writing, you're free to do that. Okay, with that then Mr. Draper, you may proceed. Thank you. May it please the court and counsel, we're here today to address a claim that was pending in the circuit court that raises a challenge or a test of the limits of legislative power to affect vested rights, particularly in this case, the vested rights of a public official after having been appointed to public office. In trying to pursue an appropriate remedy in the case, the plaintiff filed a motion for preliminary injunction after having been first appointed by the Workers' Compensation Commission to a new term of office that would begin on July 1, 2012. Having faced a decision and a motion adopted by that commission later to attempt to rescind its earlier action, and then the implications of a new public act that became effective late in the month of June 2012, providing that the governor would make future appointments and reappointments for workers' compensation arbitrators. In this case, we believe that the circuit court was in error in failing to grant the preliminary injunction. And looking at the fundamental purpose of a preliminary injunction, particularly applicable in this case, where the purpose of the injunctive relief at that stage is to preserve a status quo at the point in time last uncontested so that the court could shape an appropriate remedy. By failing to do so, we are now caught in the conundrum of what kind of remedy might be made available now at least a year after the effect of these actions. And the last point in time that we believe that the court should have preserved the status quo was that of May 2012 after the commission reappointed Mr. Aikman as arbitrator in a way that's uncontested in this argument, that was in full compliance with the statutory authority given to the commission at that time. And the commission did so when the only step needed was for the commission to make a motion to make the reappointment and approve it, something that, again, is not contested in this record. The commission, in fact, had done. Alternatively, if not, the preliminary injunction asks that the court prohibit the governor, since the new legislation had by that point taken effect, from making any appointment, thereby leaving the position vacant until there could be a determination as to who had the lawful authority to make the appointment and so that the appointee could be considered valid. This is argued in more extensive portions of both of our briefs at the end when we talk about the balance of harms and the public interest because both the defendants and plaintiff have cited the same body of case law. But there's a question that could be raised about the lawful authority of the arbitrator appointed to fill this vacancy. Of course, it's plaintiff's contention that anyone other than plaintiff appointed to that may not be lawfully appointed, and that raises questions of possible collateral challenge. The state's brief raises exactly the same point, making the claim that if Mr. Aikman were not properly appointed, then the preliminary injunction might have interfered if that injunction ordered his reinstatement. In any event, these were questions that didn't have to be decided by the circuit court who could have simply prohibited any filling of that vacancy until this legal question is resolved. And that's what should have been done in a case like this that presents largely a legal question. This is not a fact-intensive question. Not only is the record uncontested in terms of the sequence of events because of the procedure that it came up through a preliminary injunction hearing with no pleading on file denying any of the allegations, but more importantly, because really all of the action exists in public records. And there can't be any serious dispute about the sequence of events, and I don't think the state's position is that there's a factual issue to be resolved here. So the question here is whether or not the circuit court properly denied the motion for preliminary injunction or abused its discretion in failing to do so. And we believe the court did because the court found that three of the four factors necessary for a preliminary injunction were in fact met based upon the truthfulness assumed in the allegations of the complaint and the motion. And the fact that as a matter of law, in the case law that we have cited to the court, it's logically impossible for the court to conclude that there is irreparable harm, as the court found, and then fail to find that there is no adequate remedy at law. Why can't there be, if Mr. Pinkman were to prevail here, why doesn't he just get damages? The reason he doesn't just get damages, as we've pointed out, citing for example the body of case law in the East St. Louis Federation of Teachers case, is that public officials have more in their property right than simply a salary. And in fact, obviously more is at stake here in terms of other things that are non-monetary that accompany being appointed to a public office like arbitrary of the Workers' Compensation Commission. And even if Mr. Aikman doesn't have a right under the law to be appointed... Well, obviously there would be the pension and other non-monetary benefits that come with state employment, none of which are strictly monetary. Well, pension is something which is reducible to damages. What else? Well, pension may or may not be because it carries with it a lot of other benefits that depend upon years of service as opposed to just monetary compensation. And as I said, the East St. Louis Federation of Teachers case recognized the importance and protection under the law of a public official to be able to carry out the duties of office to which that person is either elected or appointed. And those, in fact, trigger due process protections. So without some power to grant some kind of injunctive relief that would order reinstatement, this issue is one where there's not an adequate remedy. Look further in the record. I'm trying to find the East St. Louis case again in your brief. It was actually cited in the brief of the defendants. Oh, it's not been in yours? I believe I discussed the reference to that that the defendant cited in my reply brief, but it wasn't in our main brief. Okay, go ahead. The other thing to note in the record is the unresolved issue that there's a motion to dismiss on grounds of claims of immunity that the state has, and a claim that exclusive jurisdiction for any remedy Mr. Aikman may have would lie in the Court of Claims. And as we have then outlined in our reply brief to that, the Court of Claims has no ability to enter any kind of injunctive relief. The Court of Claims has no ability to decide constitutional law questions. The Court of Claims has no ability to order reinstatement or to act in any way contrary to statutes. It's a very limited administrative body. It doesn't address preliminary injunctions. It addresses the adequacy of the remedy, because if the remedy is presumed that you could seek money damages, then we have to also deal with the motion to dismiss and the immunity, and the question of if the remedy lies in the Court of Claims, how adequate is that remedy? And that remedy in the Court of Claims is certainly not adequate. Well, but if it doesn't lie in the Court of Claims, in the Circuit Court, you can go to the Circuit Court and still have your case heard, even if the preliminary injunction is denied. Well, that's correct, but the Court failed to properly analyze the issues and, in fact, should have preserved the best opportunity for a remedy, which might have been to order that no body could be appointed to the position pending the determination of the legal question by the Court, something that, of course, also could have been handled expeditiously in the public interest to determine who is the lawful appointee, someone appointed by the Commission, as we argue, or someone that the governor might be able to appoint in the future. So that is the focus of the question here, and in defending against it, the briefs of the parties, we spent a short period of time on behalf of plaintiffs outlining why the Court correctly ruled on the first three factors and focused, then, on the error of the Court in finding that there was not an adequate showing of no adequate remedy at law. By contrast, the defendant's brief is really full of attack on all of this under an interpretation of the public act that's at issue here, and that the statute gives all of the process that might be due if this case is reviewed simply as a due process claim, which it's not. The case that we bring is one simply of statutory interpretation. How is it you're arguing that this standard of review is the no vote? The question of law that's controlling, that really both sides have... I mean, it's a question of law. Why is it a discretionary call at the trial court whether to issue a preliminary injunction? It's a discretionary call, but some courts have found that on some of these elements, the question of whether the element's been satisfied is a question of law, and the question of law that arises here is the proper interpretation of Public Act 97-719. Well, that's one of the issues, but that isn't the only issue here. As to that issue, we have argued in the statute... You don't break it down in any way to discuss the issues that are present, whether or not, for instance, this is an emergency situation, whether this is a matter of irreparable injury in the absence of an injunction. These are discretionary matters. Well, the reason that I cited that is because of the principle deciding factor here. The question that the court analyzed on whether there is or isn't an adequate remedy at law really raises a legal question that derives from the interpretation of the Public Act 97-719. It's not just because it's easier to win if it's de novo, counsel? Well, I would always like it to be that de novo review, of course, but that is not the reason that that's cited, and in fact, you'll see that the defendants likewise cited that the questions that they are presenting are questions of law, and I think that is the overriding question that the circuit court will ultimately have to get back to addressing, but it shaped the court's analysis on this one factor. But otherwise, the general principle is that your review of that decision is for abuse of discretion. Is the question whether or not there's an irreparable injury in the absence of an injunction one that's addressed in a trial court's discretion? Well, the whole issue is addressed to the trial court's discretion, but when we look at the clear law on this and look, for example, at biomedical laboratories versus trainer, the Illinois Supreme Court addressed these same issues about an injunction, and when it did so, it decided that as a matter of law, the action by the agency in depriving the laboratory of future contracts with the state, in fact, raised a legal question, and that the legal question that the circuit court addressed was erroneous. The Keith Shea case that we cited to the court about the standards for preliminary injunction found that the failure of the circuit court, when it ruled there was no adequate remedy at law, was, and according to the decision, error as a matter of law. And it's because of what the Keith Shea decision ruled in that area that we've argued that the standard of review here is a de novo review of that legal question. The entire interests of the parties can't be divorced from a review of what the statutory provision does, and in this case, we believe that the statutory history and the steps taken reveal that there was a process for reappointment of arbitrators and that it was lawfully followed by the commission, and because of that, Peter Aikman was given a vested office for three years. The statutory scheme provides that removal may be only done for cause and provides a specific procedure just like you would have with other employees in a civil service commission type of review. The courts have always recognized those as property interests protected by due process guarantees, which comes into play then when interpreting the effect of the new public act. The argument is made that the new public act, in essence, negated the prior lawful action of the Workers' Compensation Commission. In truth, that cannot be the case, and that goes to the heart of the rights that are implicated here. Unless Peter Aikman can be restored to this position as arbitrator, there isn't any other remedy that adequately, and that's really the test here is adequately, provides him an avenue for a redress. The reason that the public act really does not have that effect that is argued by the defendants is this. The public act relates to or changes the process for appointments that would happen after the effective date of the act. A couple of important points here. The act did not say it will apply to appointments during calendar year 2012. It did not purport to say that it would deal with terms of office that are currently existing and would expire on June 30, after June 30, 2012. By contrast, a year earlier than that, in 2011, when the larger so-called Workers' Compensation Reform Bill was passed, the terms of arbitrators were, in fact, expressly terminated by that legislation and then a new process for appointment implemented, and the legislation on its face clearly defined that it would apply to the existing terms of office. Knowing how to do that, as the General Assembly has shown, it did not do so in this case, and it clearly then established, it followed the process that was in existence. The brief of the defendants keeps referring to the public act affecting reappointments to terms of office, and that's not the language in the statute. It's not got anything to do with any particular term of office. It purports to authorize the governor to make appointments. It doesn't actually refer to the terms to which the statutory scheme applies. And this begs the question, then, what appointments would the governor be making if there are no vacancies? This is a case of simple and direct statutory interpretation. The Workers' Compensation Commission had the authority and exercised the authority to make a reappointment. It attempted to take that reappointment away in subsequent action. There is no statutory support for its authority to do that, and there was never even a defense argument made that it has that power. And so it's unquestioned that Peter Aikman was appointed. The question is whether this court will allow the legislative adoption of a process to apply for future appointments to imply a termination of an already made, legally satisfied appointment that the commission, in fact, made in the case. And there is no basis for that. When the court found that there was irreparable harm, then, in accordance with, let me see if I get the case right, I think the Petros-Rilke case, the courts have held that inadequate irreparable harm leads to, is the most common way of proving that there is no adequate remedy at law. They're really two sides of the same coin. It's logically inconsistent to say you have irreparable harm, but you have an adequate remedy. Is that collapsing it, though? Because I was going to save my question for the Assistant Attorney General, but it seemed to me that maybe the court erred there. I don't see how you find irreparable injury and then say, but there's an adequate remedy at law. Because, by definition, an irreparable injury is irreparable. And I think that's where the legal analysis from the circuit court broke down, and that's where there's a legal error on the part of the circuit court. Having made the finding, and the finding is quite well supported by the record, and, of course, there's no question as to what the judge ruled in the case. He specified the three factors that were found, and the one factor that was not found, and then decided that he would decide no other of the questions that remain pending. The reason that the harm is irreparable is for the very reason I said. There can only be one person in this appointed position. There are only 12 arbitrators in this cycle of appointments, and there isn't a comparable, adequate, other kind of position that could be held. And, like I said, with the East St. Louis Federation of Teachers rulings, there is a protected interest that the court should have respected. Is that protected interest for elected officials as well as appointed? It is if they are already elected. There is some distinction because there are arguments made that no one has a right to do business with the state, or nobody has a presumption of being able to occupy a case. The Mag decision, for example, dealt with the expectation that a candidate had that he would be, in fact, elected. And that's not protected. But cases like biomedical laboratories and the O'Keefe case both recognize that there is a right, even if you have no right to have a contract or employment with the state, you still have a right to have the statutory process followed. So fair bidding processes are appropriate, and the court has power to issue an injunction to stop an award when the bidding process is not followed, even when someone might not have the right to be awarded the contract. Thank you. Thank you, Counsel. Again, Mr. Hussack. I pronounce it and spell it frequently. Yes, I'm sorry. It's all right. I have my ancestors to blame. It's Hussack? Hussack. Hussack, with a Z. I think my father puts a little S before the Z, but most people don't hear it, and I usually don't worry too much. Hussack. That's exactly right, yes. Thank you. Thank you. And may it please the court. Counsel. I am Assistant Attorney General Richard Hussack, counsel for the defendants' appellees in this case, and I urge the court to affirm as a proper exercise of discretion the circuit court's denial of the plaintiff's motion for a preliminary injunction that would have required that he be restored to the position of arbitrator for the term that he was going to begin, but didn't begin before the new law took effect. And in joining the governor from appointing somebody else to occupy that position for that term. And I do so for three reasons. First, on the likelihood of successive merits and the fact of requiring the plaintiff to show that he had a clear legal right in need of protection, that's subject to de novo review because it turns upon a question of statutory interpretation. And there I submit that the circuit court erred in concluding that the statute provides any basis whatsoever to conclude that the legislature intended to grandfather in and create a special exception for appointments for renewal terms where they had been done pursuant to the prior statute that was replaced by the new statute and provided for the governor to make all appointments for all terms, initial terms and renewal terms. Second, on the adequate remedy at law, I think the circuit court was correct. That, I believe, is a discretionary issue and the circuit court probably concluded that any injury to the plaintiff would have been compensable by monetary damages. The plaintiff did not identify any type of injury that is based upon a right that would entitle the plaintiff to any recovery other than monetary damages if, at the end of the day, the plaintiff wins in this case. Then how did the court find irreparable injury? I don't know. And I know that there are cases, I sort of scratched my head on that one too. There are cases that say there's a distinction between irreparable injury and a lack of an adequate remedy in law. Can you explain it to me? Well, I've heard that there are examples that sometimes shine light between the two, but they don't come to mind right now and I don't honestly know how often the two can really be treated as other than being two sides of the same coin. But in this case, I think the circuit court did make the finding of an adequate remedy in law. I think that's one that's... But he also found irreparable injury. Without any findings on that. And I suppose maybe that makes the standard review on that issue at best a wash and then this court would be able to address that issue. Of course, on the other hand... We're reviewing judgments, not reasons, and the judgment is to deny the motion for preliminary injunction. I would say it in different words. I would say that to the extent that deference goes to the overall determination to deny the preliminary injunction, which is subject to an abusive discretion standard, that that would color the court's application of the standard review to the sub-factors here. An abusive discretion review is one where the institutional authority to make the decision lies with the circuit court. And so it's normally not sufficient for an appellate court to say, oh, we could have found different facts or we could have found different reasons to support. Then again, the abusive discretion standard doesn't require total deference. The court could apply that standard and determine that there was an abuse. But I would submit that the normal you could sustain on any ground supported by the record doesn't normally apply the same as it would to motions of dismiss, motions for summary judgment, those types of things for this type of issue. And then finally, on the balance of the hardships and the public injury, those factors weigh heavily against the grant of the preliminary injunction and warrant affirming the circuit court's order in this case, if only because I think as the plaintiff recognizes, restoring him to a position where he'd be able to make orders that then are void, throwing the persons affected by those orders into a chaotic situation of trying to undo actions that they may have taken in reliance on those orders would be wholly against the public interest. And I think also there's a public interest in not having courts enjoin the governor from making appointments and stepping into the process and declaring somebody to be. Let me ask you the flip side of that. Is there any, let's assume the governor has made appointments to the vacancy that was created when Mr. Aikman's position was vacant. Has he already done that in fact? Does the record show? The record does not show that, and I'm not aware of a subpoena. Well, let's assume that he did, and subsequently this court or a judicial determination is made that agrees with Mr. Draper saying Aikman wins. What would happen with regard to the rulings made by the successor, workers' compensation? In other words, is that when a ruling in favor of Mr. Draper's client render void or suspect in some fashion the decisions made by the successor appointed by the governor pursuant to the statutory authority you say? I think an ultimate determination on the merits to that effect would put in question decisions by a substitute or a successor arbitrator that the court would conclude was later improperly appointed because there was no such authority. But this is like the bird in the hand versus two in the bush type thing. Here the facts before the circuit court show that there was a person who wanted to occupy the position and there was a basis to conclude that he had no legal authority to do so as opposed to surmise about a substitute appointment by somebody else. Well, I suppose the reason I ask the question as I did is it seems to me that your position isn't any stronger than Mr. Draper's with regard to the question of the consequences of your winning or his winning. That is, if he wins, all the stuff of the successor is suspect. If you prevail and the injunction is given in putting Mr. Aikman back in, what Aikman did is suspect. If the record showed that there had been a successive appointment, then I would agree with you. Well, we don't know. Equipoise. But the record doesn't show that. And so we have the situation in which the balance tips in favor of requiring somebody to serve in office. Because we can depend upon the restraint and good sense of the governor not to fill the spot. That's your argument? All I can say is that the judge had to make a decision based upon the record before him and did so and to balance the reality of one scenario versus the possibility, you know, surmise of another one. Assuming that this position is vacant, what reason is there to believe, given all of this legislative activity, that the governor is going to leave it vacant? If I'm the trial judge and I'm evaluating Mr. Draper's position here, why shouldn't I just assume, of course the governor is going to fill this position. Someone is real excited about all these positions or we wouldn't be seeing this flurry of legislative activity. Your position seems to be essentially, well, who knows what's going to happen. I think I have a good guess. Well, I think my position is the record shows that there was no appointment. These are matters of public record. And as of the time of the briefing, I think I determined in the court to take judicial notice that there was no gubernatorial appointment to replace this position on the commission. So, you know, maybe it's like the rule of evidence or the Newton's law that things in rest tend to stay at rest. And the rule of evidence is that you have evidence of the condition of some fact on a given day. You can fairly, you know, draw the inference that it was the same condition the next day. Twenty years later, maybe not. So it's in that spectrum that I'm asking the court to conclude that an order putting this person in a certainty of a position where he would potentially be making void orders should be weighed more heavily than the mere possibility that the record doesn't show ever happened, that the governor might appoint somebody else to that position where there would be the same concern. Another question about all this. Let's assume Mr. Aitken ultimately prevails in a judicial forum. And the governor, if not now, at some point, while this is all pending, has appointed, what, 12 people? Is that correct? Something like that, I believe, yes. Has filled the vacancy. There's now a successor. In your argument about how there's no irreparable harm shown, what would happen under those circumstances? Would that, would such a decision in favor of Mr. Aitken render the subsequent appointment of his successor, or the earlier appointment of his successor, void so that Mr. Aitken would get his job back automatically? Or instead, we could say, oh, you won, but, you know, there's no vacancy. And the guy who was appointed, that was a legitimate appointment, notwithstanding your complaints. So that, gee, I'm sorry you won, but we've got no doubt to put you in, so you're out of luck. Well, these are questions that could be more interesting if, playing out down the road, the case had proceeded to a trial on the merits and a final adjudication. But I want to remind the court that we're at a preliminary injunction stage. But why shouldn't this be one thing to consider on the issue, as Justice Pope raised, of what's, do we have irreparable harm or not? And to be more blunt, it seems to me Mr. Draper has a rather stronger argument on irreparable harm if his client can't be restored to this position. I didn't take that position. You know, there's the ancient writ of quo voronto, which is intended to resolve this. And it might be that any new appointee would have to be brought into this case as a necessary party to resolve the who gets to sit in the position problem. And subject to examining it further or possibly submitting additional authority on this question, my initial reaction here, just standing at the podium, is that only one person can occupy that position. And if, in fact, the plaintiff were to prevail on the merits, ultimately on their claim, that he would have the rights to occupy that position and nobody else. It would necessarily follow from that adjudication that any other appointment was not valid to fill that term. You could only have one person wearing the crown, if you will, at a given time. So I hope that resolves, you know, that concern about the irreparable injury issue. Okay, go ahead. And I did want to devote some attention specifically to the merits here because on that issue it is a question of law. The likelihood of merits in a case isn't always a question of law. Sometimes you have competing testimony and evidence and you can't figure out what the contract means and who breached first and all that stuff. This is one where the plaintiff's position is that there was an implied grandfathering provision in the new statute such that appointments that had been made under the old procedures for terms of office that had not yet commenced would be protected against the change in procedures that subsequently took effect before that term and modify the person responsible for making those appointments. There's nothing in the statute that suggests that there was any such grandfathering of expectancies based upon uncommenced or appointments to uncommenced terms. And I think if the court looks at the statute, the plain meaning of it indicates that there is no basis to conclude that it does create this implied grandfathering of inchoate appointments for future terms. But counsel, what about Mr. Draper's reference in his brief to the statute, which I believe was the year before, that did specifically address that issue and this one doesn't? It addressed a different issue. In that case, the statute said people who are serving terms as arbitrators, those terms shall come to an end on this date. This statute didn't cut off any terms. It dealt with terms that were going to expire in the future after. I'm sorry, it dealt with terms that were going to begin after the law took effect. There's a huge difference, a material difference, and it's one thing to say that if the legislature is going to cut off somebody's term in office before it's scheduled to expire, they need to say so. We don't dispute that there's a procedural due process property interest in your position, but that's the type of property interest that the legislature can take away at the stroke of a pen. It's not protected against legislative change. It's protected against adjudicative or executive change. Well, Mr. Draper's position is his client was appointed, got a new job, pursuant to the authority vested in the commission two months before or whatever, sometime before the statute became effective. Absolutely. And if the law had not changed, his client would have had the right under that statute to take that position starting on July 1st of 2012. But the law changed before 2012. He didn't have a job. He had an appointment pursuant to a procedure to start a job later down the road, but the law governing the procedures for that new term changed before he stepped into that job as a successive appointment. And the statute, I think, makes it unambiguously clear that the governor had to make all appointments for all positions starting as of the date that he wanted to fulfill a renewal term. The statute changed the person responsible for making those renewal appointments from the commission to the governor. It said that all appointments shall be by the governor, specifically and expressly applied to the term starting on July 1st of 2012 that he says he wanted to fill. So if I understand your position correctly, Mr. Aikman may have been appointed before July 1, 2012, effective then, but since he started a new job on July 1, 2012, he didn't have the authority from the commission to do that? Only the governor could have done it? I'm not sure I quite understood the question. Well, I wouldn't blame you. I'm not sure I phrased it very well. All right, that's okay. Maybe you can rephrase it and clarify your position. Our position is that the statutory position does not create any vested rights. It cannot be modified by the legislature. Opposing counsel, Mr. Draper, referred to this as a vested right. There is no vested right in an appointive position in government. There's no contract in that position. Elected positions are fundamentally different because there's voter rights implicated and other things, and the Tully case addresses that. But this is merely an appointive position. There's no contract right, there's no constitutional right, and the legislature can change it any time it wants and can eliminate the position any time it wants. Well, I suppose it's a matter of timing. Let me try to state the question a little bit better. As Justice Holderoid pointed out, the earlier statute provided a provision that terms of office would end of these people. Maybe it's a question of when did the term of office begin of Mr. Aikman, pursuant to the proposed appointment by the commission? Did that start before July 1? No, it did not, and it wasn't supposed to start before July 1. It was an appointment for a term beginning at the expiration of his initial term under the proceeding act that revised the appointment procedure, which is Public Act 9718. And his initial term expired by July 1, 2012. Exactly right. And in order to continue on thereafter, notwithstanding what the commission did, only the governor could make appointments effective July 1, 2012 and after? That's what the new act said, and the new act superseded and replaced the appointment provisions of the prior statute. It took effect immediately. It says it shall take effect immediately, and its language says that this applies to all appointments for initial and renewal terms. They shall all be made by the governor. It creates no exception. So your position is Mr. Draper is incorrect when he says that the appointment of Mr. Aikman by the commission was effective because they had the power to do it when they did it? It was conditionally effective in the sense that if the law had not changed, it would have taken course as the prior law provided. But it wasn't effective against subsequent legislative modification of the appointment procedures. And that's what the legislature did. It had a series of terms that were expiring. As I recall, the act became effective before July 1, 2012? Yes, it did. Yes, it did. And that, I think, also helps address the question about why is this different from the earlier act. The earlier act took terms that were in course and cut them off. The new act didn't cut off any current terms. It said for terms starting after this act takes effect, all appointments shall be made by the governor, all these terms shall be filled only by the governor, and the act said it shall take effect immediately. It is inconceivable, and especially in light of the legislative history, confirming that they were eliminating the commission's role in making any reappointments for renewal terms and giving all of that authority to the government, that while they were doing that, they somehow silently intended that appointments made under the prior procedures that they were replacing that hadn't yet taken effect and weren't going to take effect, if at all, until after the new act became effective, would somehow be grandfathered in and trump the new statute that merely changes the procedures for making these appointments. There's an argument under retroactivity analysis. Why did they rescind it then? It sounds like you're saying that act wasn't even necessary. It wasn't necessary. That's exactly right. I think that the commission realized after the new act, still in the form of a bill, had passed both houses of the General Assembly, they probably got scuttled about that the governor said he was going to sign it or something like that, and they didn't want Mr. Aikman to think that his appointment to a new term, which had not yet begun, was somehow going to give him some type of vested right to that position, so they revoked it. But our position is that the validity or invalidity of that revocation is really of no consequence to the statutory interpretation issue, which is the dispositive and controlling issue on the merits of this case, which is a question of law and involves statutory interpretation. Thank you, Mr. Hosek. Thank you so much, Judge. Mr. Hosek. Hosek. Hosek. Thank you, Mr. Hosek. Mr. Graper. Thank you. Let me pick up right where the questioning left off. Supplemental record attached to the defendant's brief has the legislative history. The Senate amendment that replaced language in the bill and added this was added after the commission had already appointed Peter Aikman. It's in the record before this Court. The General Assembly, therefore, at least impliedly, had knowledge of the fact that the appointment had happened. And when we read the Act as it was amended, nothing in the Act says it applies to any particular term. Instead, it says appointments, not terms, appointments after the effective date of the Act. Now, since the legislative history we've got shows that the bill was submitted to the governor at the very end of June and the governor has 60 days in which to act, the governor might have signed this in August. You cannot infer that the General Assembly intended any particular term to be directly affected because they didn't choose to put in that this will apply to the terms that expire on July 1, 2012. They did that a year earlier when that was their intent. But they left it really to the governor to decide what the intent of the legislation is by determining when he would sign it. If they had meant for it to undo the action of the commission, then this amendment in the legislative history should have expressly done that so this Court would know what was intended. And while it may be true that no one has a right to expect that the General Assembly won't do things like eliminate positions, after having conferred a three-year term of office, you can't interpret the statute as just impliedly eliminating that when the General Assembly didn't change the office. It didn't say we will no longer have arbitrators. It didn't say we're going to change the position of arbitrator to some kind of a special hearing officer with different duties or different qualifications. Instead, the so-called grandfathering that's being assorted here really isn't there. Instead, there is an argument from the defendants that there is an implied rejection of the action that the commission took. And we read statutes by their plain words if we can. I think that the Supreme Court has repeatedly cautioned us to do that. And it says, on and after the effective date of this amendatory act, nothing precludes the governor from carrying out what this allows, which is to make appointments. There first has to be a vacancy. This is really a case of simple statutory interpretation. And the defendants' argument that you should read this statute to somehow imply that the General Assembly intended to undo appointments that were lawfully made is just not feasible, especially not with the words of the statute. All it says is the governor will make the future appointments and reappointments. And he may do so and has done so since this law has taken effect. But there first has to be a vacancy, which there was not. Given that, there is no reason or ability to read into this public act a termination of Peter Aikman's prior lawful appointment. And this is why, going back to the public interest question, the irreparable harm, especially when we deal with public office, intertwines with the public interest. And there's been no decision from the Supreme Court clearly announcing that that interplay is there, but I think it's implied in all of those decisions that deal with elected officials' right to office and the public interest, the voters' interest, for example. There are decisions, and we didn't cite them, I'm sorry, in service to the court, but dealing with the same with the point of office where the Senate has to confirm appointees, that it disrupts the balance of powers to not respect the fact that that whole process should be respected. And so the whole idea that there perhaps is an adequate remedy, especially in light of the public interest and the argument that we should go back to court and file a separate quo ronto action against the officeholder, further makes the possibility of a rational and adequate remedy virtually impossible, when the purpose of the preliminary injunction to preserve the status quo and preserve this position so that it can be filled lawfully by whoever the judge had found lawfully had that appointing power, would have resolved all of the questions. That error by the circuit court, I think, is an abusive discretion if we fall back to that standard. And for that reason, the judgment of the circuit court should be reversed. I want to thank you, counsel. We'll take this matter under advisement and recess for a moment. Before leaving, I want to mention that this is a strange and complicated case, and Mr. Hozek and Mr. Draper, on behalf of the court, I want to thank you both. I think you both have favored this court with some excellent arguments, on behalf of your respective clients. Thank you.